## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMY JO SOLIDAY, | : | CIVIL NO.: 1:24-cv-00587 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LELAND DUDEK, [1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

In this social security action, Plaintiff Amy Jo Soliday seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g). For the reasons set

---

[1] Leland Dudek is now the Acting Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 7-1* to *7-8*.[2]  In May 2022, Soliday protectively filed[3] an application for disability insurance benefits, alleging that she has been disabled since April 18, 2022. *See Admin. Tr.* at 148–52.  After the Commissioner denied her claims at the initial level and at the reconsideration level of administrative review, Soliday requested an administrative hearing. *Id.* at 82–83.  In May 2023, Soliday—who was represented by counsel— as well as a vocational expert testified at a hearing before Administrative Law Judge Richard Guida (the "ALJ"). *Id.* at 31–49.  In June 2023, the ALJ denied Soliday's claim for benefits. *Id.* at 14–29.  Soliday appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id.* at 1–13.  This makes

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Soliday's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In April 2024, Soliday, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claim. *See Doc. 1.* She requests that the court find that she is entitled to benefits or grant such other relief as is justified. *Id.* at 6–7 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 5.* The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 6, 7.* The parties filed briefs, *see docs. 9, 12,* and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary

3

sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Soliday is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a).  Under this process, the

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Soliday met the insured-status requirements through December 31, 2027. *Admin. Tr.* at 17, 19.

ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the

national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional

capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive

requisites.  Most significantly, the ALJ must provide "a clear and satisfactory

explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642

F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson*

*v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or

simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).


## IV.  The ALJ's Decision.

On June 16, 2023, the ALJ denied Soliday's claim for benefits. *Admin. Tr.* at

14–29.  He proceeded through the five-step sequential-evaluation process.

**A.  Step One.**

At step one of the sequential-evaluation process, the ALJ found that Soliday had not engaged in substantial gainful activity since her alleged onset date of April 18, 2022. *Id.* at 19.

**B.  Step Two.**

At step two of the sequential-evaluation process, the ALJ found that Soliday had the following severe impairments: degenerative disc disease, fibromyalgia, and obesity. *Id*.

Although the ALJ acknowledged that "[t]he record shows [Soliday] has a history of headaches, Vitamin D insufficiency, osteoarthritis of right acromioclavicular joint, right rotator cuff tendinitis, prediabetes, and chronic fatigue," he concluded that those impairments were not severe. *Id*. at 20.[5]  The ALJ noted that Soliday's headaches are managed by medication. *Id*.  And he observed that "[i]n April 2022, [Soliday]'s primary care provider stated [Soliday]'s [h]eadaches have remained stable on current does of Topamax[.]" *Id*. (internal quotation marks omitted).  The ALJ also stated that he "considered SSR 19-4 in finding [Soliday]'s headaches are not severe, and [he] note[d] there is minimal evidence of record of any documentation of a headache event by a third party or

---

[5] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

acceptable medical source." *Id.*  As for the other impairments that the ALJ found to be non-severe, he noted that monitoring treats Soliday's Vitamin D deficiency and her prediabetes, in March 2023, Soliday's primary care provider noted that her chronic fatigue is stable, "[i]njections manage[] her shoulder issues, and [Soliday] testified she has not had any injections for her shoulder since 2021." *Id.* Concluding that "there is little evidence of record these impairments more than minimally limit [Soliday]'s ability to perform sustained work tasks[,]" the ALJ found Soliday's headaches, Vitamin D insufficiency, osteoarthritis of right acromioclavicular joint, right rotator cuff tendinitis, prediabetes, and chronic fatigue are non-severe impairments. *Id.*  But he noted that he "considered all of [Soliday's] medically determinable impairments, including those that are not severe, when assessing [Soliday]'s residual functional capacity." *Id.*

### C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Soliday did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20.  Specifically, the ALJ considered Listings 1.15 (Disorders of the

skeletal spine resulting in compromise of a nerve root(s)) and 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina). *Id.* And regarding Soliday's fibromyalgia and obesity, he considered SSR 12-2p and SSR 19-2p. *Id.*

### D. The RFC.

The ALJ then determined that Soliday had the RFC to do light work[6] with some limitations. *Id.* at 20. He concluded that Soliday "can stand and/or walk no more than four hours in an eight-hour workday," she can "occasionally perform postural movements except she can never climb ladders, ropes, ladders, or scaffolds," and "[s]he should avoid concentrated exposure to extreme cold, vibration, dangerous machinery, and unprotected heights." *Id.*

In making this RFC assessment, the ALJ observed that Soliday asserts that "she cannot stand or sit for long, go up or down ladders; has neck, hip, and leg pain; cannot get comfortable while sleeping; has trouble bending down to put on clothes, washing her feet, and shaving [her] legs; blow d[rying] her hair and

---

[6] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

brushing her hair hurts her shoulders." *Id*. at 21. The ALJ also noted that Soliday "claims she has difficulty lifting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs." *Id*. And she asserts that "she must rest two minutes after walking 20 minutes; does not finish what she starts; has lower back pain and constant neck pain, aggravated by vacuuming, mopping, or sitting or standing too long." *Id*. The ALJ acknowledged that Soliday had three neck surgeries, and she contends that she "has no range of motion in her neck; has constant back pain and right hip pain; she has shooting pain down her right leg; has right shoulder pain shooting down her right arm; has pain in her feet, thighs, and back of her shoulder blades." *Id*. And Soliday "insists she can walk five minutes, stand ten minutes, and sit ten minutes at a time; has pain and shakiness carrying a gallon of milk; and has headaches once or twice a week, each lasting a couple of hours and causing her to lie down." *Id*.

The ALJ also considered Soliday's husband's statement, which he characterized as "largely consistent with [Soliday]'s allegations." *Id*. And the ALJ noted a "May 2022 Social Security field office report that [Soliday] had no difficulty hearing, breathing, understanding, concentrating, talking, answering, or with her coherency." *Id*.

The ALJ concluded that although Soliday's impairments "could reasonably be expected to cause the alleged symptoms[,]" her "statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

In making the RFC assessment, the ALJ also considered Soliday's medical records and concluded that they were inconsistent with her statements about her limitations. He observed that "[l]ongitudinal treatment notes generally show [Soliday] is in no acute distress with full strength, normal muscle bulk, normal muscle tone, normal range of motion, . . . intact coordination, intact cranial nerves, supple neck, intact sensation, no focal deficit, no deformity, and no swelling." *Id.* "In April 2022, [Soliday]'s neurosurgeon stated [Soliday] 'asked today about permanent full-time disability, which is not something we would typically support for a surgery such as this[,]'" and "[i]n May 2022, [Soliday]'s neurosurgeon noted [she] 'has only minor incisional discomfort. She is neurologically normal.'" *Id.* "In June 2022, [Soliday]'s orthopedist indicated [Soliday] 'was cleaning up the rabbit cage.'" *Id.* And "[w]hile [Soliday] alleges she has neck pain and no range of motion in her back, in July 2022, [her] neurosurgeon remarked [Soliday] 'is actually doing very well with regards to her neck with no discomfort at all,' '[s]he is neurologically normal,' and '[s]he may resume normal activities at this point from my perspective. Even her back pain is improving.'" *Id.* In March 2023, [Soliday]'s rheumatologist observed [Soliday] 'presents today as she was told to

see a rheumatologist by her lawyer so she could get disability for her low back pain,' '[i]n 2006-2007 she ha[d] injections via pain management . . . b[]ut has not seen a spine center since[,]' and 'has not followed regularly with anyone since the early 2000s.'" *Id*. And "[a]t this time, [Soliday] was in no acute distress and ambulating normally with full range of motion, no swelling, and no crepitus." *Id*. "Later in March 2021, [Soliday]'s primary care provider observed [Soliday] has normal range of motion, normal extremities, normal gait, normal coordination, normal strength, normal muscle tone, normal and symmetric reflexes, and supple neck." *Id*. at 21–22.

The ALJ further concluded that Soliday's "allegations she has pain are also inconsistent with her activities of daily living, which shows she reads; watches television; and can prepare simple meals, do dishes, clean with breaks, does laundry, drive, and shop in stores." *Id*.

The ALJ also considered the opinions and findings of the state agency medical and psychological consultants. *Id*. at 22–23. Dr. Deleo—one of the state agency medical consultants—found in July 2022 that Soliday "could perform light work except [s]he can stand and/or walk four hours in an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds." *Id*. at 22. Dr. Hooper—another state

agency medical consultant—found in October 2022,[7] the same as Dr. Deleo but also that Soliday must "avoid concentrated exposure to extreme cold, vibration, and hazards." *Id*.  The ALJ concluded that Dr. Deleo and Hooper's findings "are supported by the longitudinal treatment notes, which generally show [Soliday] is in no acute distress with full strength, normal muscle bulk, normal muscle tone, normal range of motion, . . . intact coordination, intact cranial nerves, supple neck, intact sensation, no focal deficit, no deformity, and no swelling." *Id*. at 22–23.  He concluded that their "statements are also consistent with [Soliday]'s activities of daily living, which shows she can prepare simple meals, do dishes, clean with breaks, does laundry, drive, and shop in stores." *Id*. at 23.  And the ALJ noted that "Dr. Deleo and Dr. Hooper are highly qualified experts who had the opportunity to review [Soliday]'s records." *Id*.

The ALJ likewise considered and found persuasive the findings from two state agency psychological consultants that Soliday does not have a medically determinable mental impairment. *Id*.  He concluded that their findings "are supported by the progress notes mostly show[ing] [Soliday] is fully oriented, alert, and cooperative with normal mood, normal affect, normal speech, normal language function, normal thought content, normal attention, normal concentration, normal

---

[7] The ALJ incorrectly lists the date of Dr. Hooper's statement as July 2022, *see Admin. Tr.* at 22, but Dr. Hooper's statement is dated October 18, 2022, *see id*. at 64–65.

fund of knowledge, normal behavior, and normal judgment." *Id.* And, he concluded, their "statements are also consistent with [Soliday]'s lack of ongoing treatment for any mental health impairment." *Id.* The ALJ also noted these consultants "are highly qualified experts who had the opportunity to review [Soliday]'s records." *Id.*

The ALJ observed that "statements on issues reserved to the Commissioner, disability examiner findings, decisions by other governmental agencies, and decisions by non-governmental entities are inherently neither valuable nor persuasive to the issue of whether a claimant is disabled or blind under the Social Security Act." *Id.* The ALJ stated that although he "reviewed and considered such as part of the record[,]" he has not provided an analysis of this evidence. *Id.* This evidence, according to the ALJ, "includes a February 2021 statement from Mathandra Burkett, Pa-C, that [Soliday] can have '[n]o work until next visit[,]' [and] "February 2021 statements from Brandon Eck, DO, that [Soliday] 'may return to full duty with no restrictions, effective 2/10/21,' and can return to work on February 10, 2021." *Id.*

The ALJ summarized the reasons for his RFC assessment:

In determining the residual function capacity, the undersigned has provided [Soliday] with limitations that would accommodate [her] symptoms, to the extent they are consistent with the record as a whole. The undersigned also considered the effects of [Soliday]'s fibromyalgia and obesity, pursuant to SSRs 12-2p and 19-2p, in making this assessment. Considering

the numerous inconsistences between testimony and the
evidence of record, [Soliday]'s reported activities of daily
living, the clinical findings of the treating physicians, the
undersigned finds [Soliday]'s complaints not fully persuasive.
The undersigned finds that despite [Soliday]'s impairments, she
retains the ability to perform work activity within the
limitations set forth above.

*Id*.

### E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Soliday

could not perform her past relevant work as a pharmaceutical technician. *Id*. at 23–

24.

### F.  Step Five.

At step five of the sequential-evaluation process, considering Soliday's age,

education, work experience, and RFC, as well as the testimony of a vocational

expert, the ALJ found that there were jobs—such as information clerk, electrical

assembler, and small products assembler—that exist in significant numbers in the

national economy that Soliday could perform. *Id*. at 24–25.

In sum, the ALJ concluded that Soliday was not disabled from April 18,

2022 (which is the alleged onset date), through the date of the ALJ's decision on

June 16, 2023. *Id*. at 25.  Thus, he denied Soliday's claim for benefits. *Id*.

## V. Discussion.

The brief filed by Soliday is unfocused and touches on many issues. *See doc. 9* (passim).[8]  But Soliday explicitly sets forth the following three claims: (1) that the ALJ erred and abused his discretion by failing to consider in the RFC limitations from her degenerative disc disease, fibromyalgia, and obesity, which he determined to be severe impairments; (2) that the ALJ erred and abused his discretion by failing to consider in the RFC limitations from her severe cervical degenerative disc disease, chronic intractable migraine headaches, tendonitis of the right shoulder with tears, and bursitis of the right hip; and (3) that the ALJ erred and abused his discretion by assigning too much weight to the opinions of the state agency consultants. *Id.* at 1–2.[9]  Because claims one and two both deal with the

---

[8] Soliday's brief also incorrectly asserts that in addition to being denied at step 5, her claim was "denied at Step 4 by the ALJ, who determined that Claimant's severe impairments did not meet any of the Listings." *Doc. 9* at 7.  In addition to being factually inaccurate given that the ALJ did not deny Soliday's claim at step 4, this assertion confuses steps 3 and 4 of the five-step sequential evaluation.  There are also other places in Soliday's brief where her counsel confuses the steps of the five-step sequential evaluation. *See id.* (confusing the date last insured with step 1); *id.* at 7–8 (confusing steps 1 and 2 by asserting that "[a]t step 2, the ALJ found that Claimant has not engaged in substantial gainful activity since her alleged onset date of April 18, 2022"); *id.* at 8 (confusing steps 2 and 3 by asserting that at step 3 the ALJ found that Soliday has severe impairments).

[9] In the argument section of her brief, Soliday sets forth that the ALJ must consider whether a claimant's impairments satisfy the criteria of a listed impairment. *Doc. 9* at 10.  Soliday makes no argument, however, regarding any listings.  Thus, she has forfeited any argument regarding step 3 and the listings.  Similarly, Soliday sets forth some law regarding the step 2 analysis. *Id.* at 17–18.

17

RFC, we address those claims together.  But because how the ALJ's assessed the

opinions of the state agency consultants informed his RFC determination, we begin

by addressing Soliday's claim that the ALJ erred in that regard.  For the reasons

discussed below, we conclude that Soliday's claims are without merit.

### A. The ALJ did not err in his consideration of the opinions of the state agency consultants.

We first address Soliday's claim regarding the ALJ's treatment of the

opinion evidence from the state agency medical consultants.[10]  We start with a

brief overview of the regulations regarding opinion evidence.  The regulations

---

But she has not explicitly argued that the ALJ erred at step 2.  Thus, she has forfeited any argument regarding step 2.  Moreover, at step 2, the ALJ determined that Soliday had severe impairments, and he proceeded past the step-two analysis. *Admin. Tr.* at 19–20.  In such circumstances, any error by the ALJ in concluding that a particular impairment was not severe is harmless error. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").  Further, to the extent that she contends in her brief that the ALJ should have considered her "learning disability to be severe," *see doc. 9* at 19, she has cited no evidence that she has a learning disability.

[10] Because Soliday concedes that all her impairments "are physical in nature," *see doc. 9* at 23–24, and she does not mention the state agency psychological consultants, we limit our analysis to the ALJ's consideration of the medical consultants.  Further, although Soliday mentions by name only Dr. Hooper, who was the state agency medical consultant who evaluated Soliday's claim on reconsideration, because Dr. Hooper's findings substantially mirrored the findings of Dr. Deleo, who was the state agency medical consultant who evaluated Soliday's claim initially, and because the ALJ analyzed Dr. Deleo and Dr. Hooper's opinions together, we address the ALJ's consideration of both Dr. Deleo and Dr. Hooper's opinions.

regarding the evaluation of opinion evidence are different for claims filed before March 27, 2017 ("old regulations"), on the one hand, and for claims, like Soliday's, filed on or after March 27, 2017 ("new regulations"), on the other hand. The new regulations applicable here have been described as a "paradigm shift" in the way medical opinions are evaluated. *Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. at 280. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

    Further, under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.967(c). Under the new regulations, however, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain how he or she "considered

the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in" his or her determination or decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may, but is not required to, explain how he or she considered the remaining three factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are defined in 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  As the regulations provide, supportability means: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Simply put, supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Acosta Cuevas v. Commissioner of Social Security*, No. 20-CV-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021*), adopting report and recommendation*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022).  On the other hand, consistency means: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The consistency factor focuses on "how well a medical source is supported, or not supported, by the entire record." *Acosta Cuevas*, 2021 WL 363682, at *10.

Here, Soliday contends that the ALJ erred in relying on the state agency medical consultants' opinions because those opinions are inconsistent with the record as a whole.  But as the above summary of the ALJ's decision shows, the ALJ explained why he found the opinions consistent with "the longitudinal treatment notes, which generally show [Soliday] is in no acute distress with full strength, normal muscle bulk, normal muscle tone, normal range of motion, . . . intact coordination, intact cranial nerves, supple neck, intact sensation, no focal deficit, no deformity, and no swelling." *Admin. Tr.* at 22–23.  And the ALJ further concluded that their "statements are also consistent with [Soliday]'s activities of daily living, which shows she can prepare simple meals, do dishes, clean with breaks, does laundry, drive, and shop in stores." *Id.* at 23.

Soliday also highlights that the state agency consultants did not examine her, and without identifying specific records, she contends that they rendered their opinions without the benefit of many of the medical records in this case.  But the opinions of state agency consultants "merit significant consideration." *Chandler v.*

21

*Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011).  And "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Id.*  Further, the mere fact that some additional medical evidence is received after the agency consultant's report does not necessarily mean that the ALJ may not rely on the agency consultant's opinions. *Id.*  Here, the ALJ appropriately considered the opinions of the state agency consultants, and he explained why he found their opinions persuasive.

Soliday also contends that ALJ erred in relying on the opinions of the state agency consultants because those consultants were single decisionmakers.  This argument is meritless.

As the Commissioner explains in his brief, "regulations allow the agency to test modifications to the disability determination process." *Doc. 12* at 25 (citing 20 C.F.R. § 404.906).  One such test modification was the single decisionmaker model. 20 C.F.R. § 404.906(b)(2).  Under that test model, a single decisionmaker ("SDM") makes the initial disability determination, and "a medical or psychological consultant is not required to sign a disability determination form, though a SDM may consult with such medical professionals when it is appropriate." *Yorkus v. Astrue*, No. CIV.A. 10-2197, 2011 WL 7400189, at *4 (E.D. Pa. Feb. 28, 2011).  "[A] SDM's RFC assessment is not to be accorded any

evidentiary weight when an ALJ is deciding a case at the hearing level." *Saez v. Colvin*, 216 F. Supp. 3d 497, 506 n.1 (M.D. Pa. 2016).  In December 2018, the Social Security Administration announced that it ended "the single decisionmaker test on October 1, 2018[.]" Harvey L. McCormick and David D. Camp, 2 Social Security Claims and Procedures § 12:11.60 (6th ed.)

Soliday's contention that the ALJ erred in relying on the state agency consultants because they are SDMs is meritless because both Dr. Deleo and Dr. Hooper are medical agency consultants, not SDMs. *See Admin. Tr.* at 55 ("MC/PC Signature: Joanna Marie Deleo DO"); *id.* at 64, 65 ("MC/PC Signature: Ethel Marie Hooper MD").

Finally, in connection with her argument that the ALJ erred in relying on the state agency consultants, Soliday asserts that "[i]f the ALJ felt that there we[re] insufficient medical opinions of record to support his findings regarding [her] RFC, he should have utilized the services of a consultative exam physician, or a medical expert, as it would appear that the opinions and finding from both the ALJ and Dr. Hooper are in conflict with the medical record." *Doc. 9* at 24–25.  First, although Soliday disagrees with the opinions of the Drs. Deleo and Hooper, that does not mean that Drs. Deleo and Hooper's opinions were in conflict with the medical record.  Moreover, the ALJ obviously did not feel that there were insufficient medical opinions in the record; he found the medical opinions of Drs.

Deleo and Hooper to be persuasive.  And because "a wealth of medical records

from the relevant period were available and included in the record" and because

the ALJ had the opinions of Drs. Deleo and Hooper, the ALJ was not required to

use a medical expert or order a consultative exam. *Kushner v. Comm'r Soc. Sec.*,

765 F. App'x 825, 830 (3d Cir. 2019); *see also* 20 C.F.R. § 404.1519a ("When we

will purchase a consultative examination and how we will use it").

In sum, the ALJ did not err in his treatment of the state agency consultant's

opinions, and his decision in this regard is supported by substantial evidence.


### B.  The ALJ did not err by failing to impose additional limitations in the RFC.

Soliday claims that the ALJ erred and abused his discretion in formulating

her RFC by failing to include additional limitations in the RFC both with regard to

the impairments he found to be severe and with regard to the impairments that he

found to be non-severe.  Before addressing Soliday's specific arguments, we set

forth the standards regarding the RFC assessment in general.

"The ALJ—not treating or examining physicians or State agency

consultants—must make the ultimate disability and RFC determinations."

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is

"'that which an individual is still able to do despite the limitations caused by his or

her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359

n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of

record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ

may choose whom to credit but 'cannot reject evidence for no reason or for the

wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting

*Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the

plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is

supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL

4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113,

129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's]

residual functional capacity with the deference required of the substantial evidence

standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the

ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).  And

"[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of

one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505

(3d Cir. 2009).  In fact, in evaluating the medical opinion evidence of record, "the

ALJ is not only entitled but required to choose between" conflicting medical

opinions. *Cotter,* 642 F.2d at 705.

In setting the RFC, the ALJ must also clearly articulate his or her reasoning.

In other words, the ALJ must "set forth the reasons for his decision" to allow for

meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05). Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

Applying the above standards to the present record, we conclude that the ALJ's RFC determination is supported by substantial evidence. First, contrary to Soliday's suggestion otherwise, the ALJ considered the record as a whole. Although Soliday contends that the ALJ focused only on records which show improvement, in making his RFC assessment, as detailed above, the ALJ reviewed Soliday's assertions and testimony regarding her impairments and limitations, her husband's report, the medical records, the opinion evidence from the state agency

consultants, and Soliday's daily activities.  In sum, the ALJ considered the record as a whole.

Soliday suggests that the ALJ failed to consider her severe cervical degenerative disc disease, chronic intractable migraine headaches, tendonitis of the right shoulder with tears, and bursitis of the right hip.  But the ALJ acknowledged that Soliday had cervical surgeries, and he cites medical records regarding her response to the most recent surgery, which was at the start of the alleged onset date. *See Admin. Tr.* at 21–22.  He also discussed Soliday's headaches and her shoulder issues. *See id.* at 20.  And he acknowledged that she asserted that she had hip pain, but he observed that her medical records "generally shows that [she] is no acute distress with full strength, normal muscle bulk , normal muscle tone, normal range of motion, . . . intact coordination, intact cranial nerves, supple neck, intact sensation, no focal deficit, no deformity, and no swelling." *Id*. at 21.

Citing to her medical records, Soliday contends that the record supports more significant limitations than those found by the ALJ.  She also asserts that the ALJ failed to note many of her issues and records—without pinpointing which ones—in his decision.  As the Commissioner points out, many of the records cited by Soliday in her brief were from before her alleged onset date and predate her April 2022 cervical surgery, and the ALJ did cite to records from after that surgery.

27

Soliday also contends that the ALJ erred in relying on her activities of daily living in determining her RFC without explaining how her ability to do simple minor things at her own pace and with regular breaks translates to the ability to do substantial gainful activity.

"Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981). And "[i]t is well established that sporadic or transitory activity does not disprove disability." *Id*. at 971–72; *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 n.5 (3d Cir. 2001) (noting that "Fargnoli's trip to Europe in 1988 cannot be the basis for a finding that he is capable of doing a light exertional job because sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity"). "[N]evertheless, an ALJ may properly consider a plaintiff's activities of daily living when evaluating her subjective complaints of pain or other symptoms." *Thomas v. O'Malley*, No. 3:22-CV-01774, 2024 WL 1333033, at *5 (M.D. Pa. Mar. 28, 2024) (citing *Turby v. Barnhart*, 54 F. App'x 118, 122 n.1 (3d Cir. 2002)). In fact, a claimant's daily activities is one of the factors that the ALJ is required to consider when evaluating a claimant's symptoms and limitations. 20 C.F.R. § 404.1529(c)(3)(i).

Here, although the ALJ concluded that Soliday's activities of daily living were inconsistent with her assertions, he also relied on the medical evidence, and

the opinions of the state agency medical consultants when determining Soliday's

RFC.  While the ALJ's discussion of Soliday's activities of daily living could have

been more comprehensive, when reading the ALJ's decision as a whole, we

conclude that any error in this regard was harmless given that Soliday's activities

of daily living was only one of several bases for the ALJ's RFC determination. *See*

*Heather M. v. Dudek,* No. 23-2239, 2025 WL 834750, at *14 (E.D. Pa. Mar. 17,

2025) (stating that "[b]y itself, without further explanation why Plaintiff's daily

activities were inconsistent with the pain she alleged, this conclusion seems to veer

into improper reliance on sporadic and transitory activity[,]" but finding that "any

error is harmless" given that that ALJ also relied on treatment evidence to support

his assessment of Plaintiff's complaints and "Plaintiff's daily activities were only

one of several bases for the ALJ's determination regarding Plaintiff's subjective

complaints").

Soliday's principal assertion is that she is more limited than accounted for

by the ALJ, and the ALJ should have imposed additional limitations in his RFC.

More specifically, she asserts that that ALJ should have included limitations in the

RFC regarding her "use of her upper extremities, in terms of lifting, carrying,

reaching, handling, fingering, and use of hand controls, in light of her diagnosed

and treated tendinitis of the right shoulder with tears, and radiating pain into her

left shoulder from her neck, and some paresthesia[] in her fingers in her left hand."

29

*Doc. 9* at 13–14.  She also contends that the ALJ should have included in the RFC limitations regarding her "(1) being off task more than 15% of the workday, (2) needing to walk away from the work station 10 minutes every hour, [and] (3) missing work more than 8 hours of work per month, any of which, per the Vocational expert, would eliminate all jobs that [the] Vocational Expert testified to . . . [and] would render [her] unemployable." *Id*. at 16.  And she contends the ALJ should have included additional limitations regarding her "ability to walk, sit, stand, lift, carry, bend, crouch, stoop, pay attention, concentrate, focus, [and] remain on task[.]" *Id*. at 18.

While Soliday argues that the ALJ erred in failing to include the above limitations, "an ALJ is only obligated to include the claimant's credibly established limitations in the RFC." *Rivera v. Kijakazi*, No. 1:21-CV-1269, 2023 WL 4916398, at *12 (M.D. Pa. Aug. 1, 2023) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)).  And here, the ALJ concluded that Soliday's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" were "not entirely consistent with the medical evidence and other evidence in the record[.]" *Admin. Tr.* at 21.  And in reviewing the medical evidence, he noted that Soliday's "[l]ongitudinal treatment notes generally show [Soliday] is in no acute distress with full strength, normal muscle bulk, normal muscle tone, normal range of motion, . . . intact coordination, intact cranial nerves, supple neck, intact

sensation, no focal deficit, no deformity, and no swelling." *Id*. at 21. He also found that her activities of daily living were inconsistent with her contentions regarding her limitations. *Id*. at 22. Thus, the ALJ found that she could perform light work with some limitations. In so finding, the ALJ implicitly rejected that Soliday had the limitations that she now contends he should have found. And he adequately explained his reasons for doing so.

Moreover, although a different factfinder may well have come to a conclusion different from the ALJ in this case, we cannot reweigh the evidence. *Chandler*, 667 F.3d at 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (citation omitted)). And "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). Here, the ALJ fulfilled his duty in evaluating the evidence and explaining why he chose to credit some evidence over other evidence. Accordingly, we conclude that the ALJ's decision regarding Soliday's RFC is supported by substantial evidence.

## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner.

An appropriate order follows.


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge